530

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES MICHAEL SHERWOOD, Defendant-Appellant.

Fourth District   No. 4—85—0503

Opinion filed March 3, 1986.

Daniel D. Yuhas and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

Marty Schnorf, State's Attorney, of Toledo (Kenneth R. Boyle, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

On January 4, 1985, defendant was arrested and taken into custody, and was thereafter charged by complaint in this cause, Cumberland County No. 85—CF—1 (No. 85—CF—1), with the offense of unlawful possession of between 30 and 500 grams of a substance containing cannabis. (Ill. Rev. Stat. 1983, ch. 56½, par. 704(d).) At the time he was arrested and taken into custody in this cause, he was on bond for a separate aggravated battery offense, Cumberland County No. 84—CF—21 (No. 84—CF—21). The record shows that, at the time of defendant's arrest in this cause, there were also charges pending against him in other counties, including Effingham County, Coles County, and Moultrie County; warrants for his arrest were outstanding on several of these charges. Defendant's bond in this cause was set at $25,000 and, on defendant's motion, was later reduced to $15,000 on February 26, 1984. In reducing defendant's bond, the trial judge stated that as long as defendant remained in custody in No. 85—CF—1, he was entitled to have the $500 bond posted in No. 84—CF—21 returned to him, if he chose; however, if the bond in No. 84—CF—21 was returned to him, and he was thereafter released on bond in No. 85—CF—1, he would again have to post the $500 bond in that cause, as well as the $15,000 bond in this cause.

The defendant remained in custody in this cause, No. 85—CF—1; apparently, the State did not file a petition to revoke defendant's bond in No. 84—CF—21.

Defendant was scheduled to go to trial in No. 84—CF—21 on March 28, 1985. On March 26, 1985, he entered a plea of guilty in that cause.

On May 13, 1985, defendant filed a motion to dismiss No. 85—CF—1 for want of a speedy trial under section 103—5(a) of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1983, ch. 38, par. 103—5(a)). The motion alleged that 130 days had passed since defendant was arrested and taken into custody in this cause. The motion acknowledged that a delay of seven days of this period was properly attributable to the defendant.

After a hearing on May 14, 1985, the trial court agreed with the State that defendant fell instead within the language of section 103—5(e) (Ill. Rev. Stat. 1983, ch. 38, par. 103—5(e)), the simultaneous cus-

tody provision; and that the State was therefore permitted to try the cause within 160 days from the date on which judgment was rendered relative to the first charge prosecuted, *i.e.*, No. 84—CF—21.

On May 16, 1985, defendant's bond in this cause was reduced to $5,000, the bond was posted, and he was released on bail. Defendant moved for reconsideration of his motion to dismiss for want of a speedy trial. The trial court denied the motion for reconsideration. After a bench trial, defendant was convicted and sentenced to two years' probation, with conditions that he serve 132 days in jail with credit for 132 days served, pay a fine of $150 with credit of $5 a day for time served, and ordered to pay $145 court costs. This appeal followed.

The single issue on appeal is whether the trial court erred in its interpretation of section 103—5 of the Code, and thereby erred in denying defendant's motion to dismiss this cause because he was not brought to trial for the offense within 120 days from the date he was taken into custody on it.

Section 103—5 of the Code provides in pertinent part:

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned [1] by the defendant, [2] by an examination for competency ordered pursuant to Section 104—2 of this Act, [3] by a competency hearing, [4] by an adjudication of incompetency for trial, [5] by a continuance allowed pursuant to Section 114—4 of this Act after a court's determination of the defendant's physical incapacity for trial, or [6] by an interlocutory appeal.

(b) Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by [the six factors set forth in (a) above].
* * *
(e) If a person is [1] *simultaneously in custody* upon more than one charge pending against him in the same county, *or* [2] *simultaneously demands trial* upon more than one charge pending against him in the same county, he shall be tried, or adjudged guilty after waiver of trial, upon at least one such charge before expiration relative to any of such pending charges of the period prescribed by subparagraphs (a) and (b) of this Section. Such person shall be tried upon all of the remaining charges thus pending within 160 days from the date on which judgment relative to the first charge thus prosecuted is

rendered pursuant to Section 118—1 of this Act or, if such trial upon such first charge is terminated without judgment and there is no subsequent trial of, or adjudication of guilt after waiver of trial of, such first charge within a reasonable time, the person shall be tried upon all of the remaining charges thus pending within 160 days from the date on which such trial is terminated; if either such period of 160 days expires without the commencement of trial of *** any of such remaining charges thus pending, such charge or charges shall be dismissed and barred for want of prosecution ***." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 38, pars. 103—5(a), (b), (e).)

The Illinois Supreme Court has repeatedly held that section 103—5 is to be construed liberally so as to give effect to the constitutional right to a speedy trial (U.S. Const., amend. VI; Ill. Const. 1970, art. I, sec. 8). (*People v. Brown* (1982), 92 Ill. 2d 248, 258, 442 N.E.2d 136, 140; *People v. Pearson* (1981), 88 Ill. 2d 210, 216, 430 N.E.2d 990, 992; *People v. Fosdick* (1967), 36 Ill. 2d 524, 528-29, 224 N.E.2d 242, 245.) The question of whether a defendant's right to a speedy trial has been violated depends upon the surrounding circumstances of each case. (*People v. Richards* (1980), 81 Ill. 2d 454, 459-60, 410 N.E.2d 833, 836, citing *People v. Beyah* (1977), 67 Ill. 2d 423, 367 N.E.2d 1334; *People v. Love* (1968), 39 Ill. 2d 436, 235 N.E.2d 819.) While the Illinois Constitution guarantees the accused a speedy trial, it specifies no time. (Ill. Ann. Stat., ch. 38, par. 103—5, Committee Comments— 1963, at 58 (Smith-Hurd 1980).) It has been held that the right conferred by the statute is not absolute in the sense that the mere passage of time ousts the court of jurisdiction to try the accused and makes his release mandatory. *People v. Pearson* (1981), 88 Ill. 2d 210, 216, 430 N.E.2d 990, 992, citing *People v. Moriarity* (1966), 33 Ill. 2d 606, 609, 213 N.E.2d 515, 517; *People v. Morris* (1954), 3 Ill. 2d 437, 442, 121 N.E.2d 810, 814; *People v. Utterback* (1944), 385 Ill. 239, 243, 52 N.E.2d 775, 777.

Three cases have been cited as pertinent to the circumstances in this appeal: *People v. Wilson* (1974), 19 Ill. App. 3d 466, 311 N.E.2d 759, *People v. Cooper* (1977), 56 Ill. App. 3d 354, 371 N.E.2d 987, and *People v. Brown* (1981), 94 Ill. App. 3d 609, 418 N.E.2d 1093, *aff'd* (1982), 92 Ill. 2d 248, 442 N.E.2d 136. Defendant argues that *Cooper* controls on the facts of this case; while the State argues that the rationale stated in *Wilson* and *Brown*, as applied by the trial court, is controlling.

In *Wilson*, the defendant was indicted for burglary in St. Clair County in June 1971 and released on bond. The bond was forfeited in

September 1971 when he failed to appear for trial, but was reinstated seven days later. In February 1972, defendant Wilson was arrested in the same county and held without bond on charges of murder and armed robbery. In June 1972, defendant Wilson filed a motion for discharge of the murder and armed robbery indictment, alleging that the State had failed to comply with the speedy-trial requirement of section 103—5(a). The circuit court granted the defendant's motion and the State appealed. On appeal the defendant maintained that, since he had been on bond for the burglary charge even after his arrest and incarceration for the murder and armed robbery charges, he was not "simultaneously in custody" on all of the charges and, therefore, section 103—5(e) was not applicable as the State argued. The *Wilson* court disagreed, citing *People v. Allen* (1972), 7 Ill. App. 3d 875, 876-77, 289 N.E.2d 21, 22. The reviewing court in *Wilson* stated:

"Section 103—5(e) was intended to preserve a defendant's right to a speedy trial and at the same time to mitigate the State's burden of preparing more than one charge for trial against a single incarcerated defendant. It would be unreasonable in many instances to expect the State to be prepared for trials on more than one charge against one defendant in only 120 days. We believe that this protection was intended to be afforded the State in all cases in which the defendant is in custody and in which more than one charge is pending. *The fact that the defendant is technically on bond for one of the charges should not defeat the purpose of the statute.* Based upon that rationale and upon *People v. Allen*, we hold that, when a defendant is simultaneously charged with more than one offense and when he is in custody, he is 'simultaneously in custody upon more than one charge' within the meaning of subsection (e).

Because section 103—5(e) was applicable in the instant case, the State had 160 days from the date of judgment rendering the defendant guilty of burglary in which to try the defendant for the other charges. The circuit court erred, therefore, in granting the defendant's motion for a discharge before the 160-day period had run." (Emphasis added.) *People v. Wilson* (1974), 19 Ill. App. 3d 466, 468, 311 N.E.2d 759, 761.

In *Cooper*, defendant Cooper was charged by indictment with armed robbery, attempted murder, and multiple counts of aggravated battery; he was arrested and taken into custody for these offenses in December 1975. In November 1975, he had been released on bond in connection with a theft charge in a suburban courtroom. When the

theft matter was called in that court, counsel advised the trial court that the defendant was in custody at the county jail on the charges of armed robbery, attempted murder, and aggravated battery. The record did not disclose whether bond set on the theft charge was forfeited, but a writ apparently issued for the defendant's appearance in the suburban courtroom in connection with the theft charge. In January 1976, the defendant pleaded guilty to the theft charge and was sentenced to one year in the county jail. Defendant Wilson thereafter remained in custody until filing a motion for discharge in June 1976, alleging lack of a speedy trial on the charges of armed robbery, attempted murder, and aggravated battery. The State argued against the motion that the defendant had been in "simultaneous custody," thereby permitting the State 160 days after his plea of guilty and sentence on the theft charge in January 1976 in which to try him on the latter charges. The trial court discharged the defendant and the State appealed.

Defendant Cooper filed no brief on appeal, and the trial court was affirmed on the standard set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495. The court in *Cooper* found *Wilson* distinguishable on the facts:

> "[In *Wilson*], defendant was in fact brought to trial on the burglary charge, which, apart from the reviewing court's characterization as being 'technically on bond,' would indicate that the State had taken some action to prepare for trial or to revoke defendant's bond. The criteria set forth in *Wilson* was therefore satisfied. Defendant obviously demanded trial, and the State was required to prepare therefor. Here, conversely, the record fails to disclose any action having been taken by the State to prepare for trial on the theft charge or to revoke defendant's bond relative thereto (see, *e.g.*, Ill. Rev. Stat. 1975, ch. 38, pars. 110—6(b), 110—10(a)(4)), nor does it appear that defendant demanded trial on that charge. And, his plea of guilty to the theft charge is at best equivocal relative to the question of whether he demanded trial thereon or whether the State moved to revoke his bond. Moreover, nothing in the instant record would support a conclusion that defendant had in some manner been placed 'in custody' on the theft charge subsequent to his custody on the instant charges such as to have constituted 'simultaneous custody' within the terms of section 103—5(e) of the Code of Criminal Procedure. See *People v. Jones* (1965), 33 Ill. 2d 357, 211 N.E.2d 261." *People v. Cooper*

(1977), 56 Ill. App. 3d 354, 357, 371 N.E.2d 987, 989.

In *Brown*, defendant Brown was indicted and arrested for the Williams' murder in April 1976, and remained in custody until May 1977, when he was released on bond. In November 1977, he was arrested for the Trice armed robbery, and remained in custody until March 1978, when he was released on bond. During his incarceration for the Trice armed robbery, defendant Brown's bond on the Williams' murder charge remained in effect. In July 1978, defendant Brown was arrested and charged in connection with the death of Charles McGee. He was never admitted to bail on these charges, having been incarcerated since July 3, 1978. Defendant Brown's bond on the first charge, the Williams' murder, was revoked on August 7, 1978; his bond on the second charge, the Trice robbery, was not revoked, but on August 8, 1978, he pleaded guilty to that armed robbery, and was sentenced to six years' imprisonment. The State proceeded to trial on the third set of charges, related to the McGee death, and defendant was sentenced on those charges in May 1980. The Williams' murder charge was still pending, and the trial court dismissed that indictment based on section 103—5 of the Code. The State appealed.

The appellate court in *Brown* remarked that the holding in *Cooper* was difficult to reconcile with that in *Wilson*, but was persuaded by the "reasoned analysis in *Wilson*" (*People v. Brown* (1981), 94 Ill. App. 3d 609, 614, 418 N.E.2d 1093, 1097); and, applying the *Wilson* court's construction of section 103—5(e), concluded that defendant Brown was in custody on all three charges on August 7, 1978. Nevertheless, because *all* of the remaining charges had to be disposed of within 160 days of the first disposition, the trial court's dismissal of the indictment was affirmed.

On further appeal, the Illinois Supreme Court remarked briefly on whether the defendant was within the language of section 103—5(e): "The appellate court concluded, and it is not here in dispute, that at the time defendant pleaded guilty to the Trice armed robbery on August 8, 1978, he was simultaneously in custody on all three charges. Consequently, section 103—5(e) is applicable and the 160-day limitations period first commenced running on August 8, 1978." *People v. Brown* (1982), 92 Ill. 2d 248, 255, 442 N.E.2d 136, 139.

■ We note that section 103—5 does not specifically address such circumstances as this, wherein a defendant is incarcerated on one charge while bond remains posted as to another charge in the same county. On the record before us, we find persuasive the rationale set forth in the decision of the Fifth District Appellate Court in *Wilson*, as referred to by the First District Appellate Court in *Brown*. More-

over, *Cooper* is distinguishable since defendant's counsel acknowledged in argument below that No. 84—CF—21, the aggravated battery charge, had in fact been set for trial, and failed to go to trial only for the reason that the defendant entered a plea of guilty two days before the trial date.

■ Second, in determining the effect of the various statutory subsections in relation to the facts of the case, it is appropriate to note that a cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. (*People v. Boykin* (1983), 94 Ill. 2d 138, 141, 445 N.E.2d 1174, 1175; *People ex rel. Hanrahan v. White* (972), 52 Ill. 2d 70, 73, 285 N.E.2d 129, 130, *cert. denied* (1972), 409 U.S. 1059, 34 L. Ed. 2d 511, 93 S. Ct. 562.) The Committee Comments to section 103—5 indicate: (1) "[e]xcept for some revision in the language used, and the separation of the various elements of the right into separate subsections, this section codifies Ill. Rev. Stat. 1961, ch. 38, par. 748, and the Illinois decisions construing it"; and (2) that subparagraph (e), prior to amendment, was a codification of ch. 38, par. 633.1, enacted in 1959 (see 1959 Ill. Laws 357). (Ill. Ann. Stat., ch. 38, par. 103—5, Committee Comments—1963, at 58 (Smith-Hurd 1980).) The Historical Note to section 103—5 indicates that the 1969 amendment substituted 160 days for 120 days in subparagraphs (b) *and* (e) each time it appeared. (Ill. Ann. Stat., ch. 38, par. 103—5, Historical Note, at 59 (Smith-Hurd 1980).) When a defendant is taken into custody and remains in custody on certain charges, while remaining on bond on prior charges pending in the same county, a reasonable interpretation of "simultaneous custody" must be given to subsection (e) in order that that subsection be given meaning in the context of the provision as a whole. As stated in *People ex rel. Morrison v. Sielaff* (1974), 58 Ill. 2d 91, 93, 316 N.E.2d 769, 770, and cases cited therein, the term "custody" has been defined as actual imprisonment, or it has been adapted to include lesser restraints. (See Black's Law Dictionary 460 (4th 3d. 1951).) It is manifestly evident that while defendant Sherwood was in custody in this cause from January 4, 1985, although the State did not pursue a petition to revoke his bond in No. 84—CF—21, neither was he "at liberty" as that term is generally conceived (see Webster's Third New International Dictionary 1303 (1976))—except in the hypertechnical sense that his bail bond may have remained posted in No. 84—CF—21. We decline to apply such an interpretation to subsection (e).

■ In addition, we note on reading the record that below the prosecutor argued an additional basis for denying the defendant's motion to dismiss the case for lack of a speedy trial: The defendant had

simultaneously demanded trial upon more than one charge pending against him in the same county. When this matter was raised and argued at the hearing on the motion for reconsideration, the court asked if there was any response to the prosecutor's argument, and defense counsel responded that there was none. It is well known that a reviewing court may examine the record on appeal in order to determine a basis on which the decision of the trial court can be supported. (See, *e.g., Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 415, 458 N.E.2d 530, 536.) Therefore, even if it were found that the defendant was not in "simultaneous custody" on these charges within the meaning of section 103—5(e), he would be within that subsection for the reason that he simultaneously demanded trial upon more than one charge pending against him in the same county.

Affirmed.

McCULLOUGH, P.J., and GREEN, J., concur.